## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CHEKETA MCKNIGHT-NERO.,**
**14124 Rippling Brook Dr.,**
**Silver Spring, MD 20906**

        **Plaintiff, individually and on**
        **behalf of all others similarly situated,**        **Civil Action No.: 1:20-cv-1541**

**v.**

**WALMART, INC.**
**701 South Walton BLVD.,**
**Bentonville, AR 72716**

        **Defendant.**

---

## COMPLAINT

---

Plaintiff Cheketa McKnight-Nero, individually, and on behalf of all others similarly situated, brings forth this action against Walmart, Inc. (hereinafter "Walmart") and respectfully states as follows:

### PRELIMINARY STATEMENT

Walmart's efforts to provide exclusive shopping hours to seniors and customers with compromised health conditions is laudable. However, Walmart's policy of requiring door security officers to arbitrarily identify which shoppers are, "...Customers with Compromised Health," is implemented in a discriminatory manner. Walmart's arbitrary policy of allowing contracted security guards to identify people whom they perceive as disabled or not, and to control entry, is a violation of the D.C. Human Rights Act and the Americans with Disabilities Act.

## JURISDICTION

1. Jurisdiction is pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1332.

## VENUE

2. Venue is proper pursuant 28 U.S. Code § 1391(b)(1) and (2) because Defendants are located in this judicial district and conduct business in this judicial district. Venue is also proper because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

3. Plaintiff Cheketa McKnight-Nero is a natural person and resident of the state of Maryland.

4. Defendant Walmart, Inc. is an employer and regularly conducts and transacts business within this judicial district. Walmart, Inc. is based in Bentonville, Arkansas.

## CLASS ACTION ALLEGATIONS

5. Plaintiff maintains that pursuant to FRCP 23, the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the class.

6. This action is necessary to protect the civil rights of Plaintiff, and all others similarly situated, who have been injured by the pertinent discriminatory acts or practices committed by Walmart's host agents, representatives, and servants of any type.

7. This action is necessary and increasingly important to protect the civil rights of Plaintiff, and all others similarly situated, that are considered as having an impaired immune system or "immunocompromised," during the COVID-19 global pandemic.

8. Walmart designates shopping times for people with disabilities. Walmart provides exclusive shopping periods between the time of 6:00 am to 7:00 am, for Senior citizens over the age of 65 and people who have an impaired immune system, or identify as "immunocompromised."

9. Walmart's policy affording "immunocompromised' consumers the opportunity to shop during exclusive shopping periods is not uniform. Walmart relies on hired security to subjectively identify prospective consumers who are "immunocompromised."

10. Walmart's non-uniform policy of relying on security guards to identify who is considered "immunocompromised," adversely affects those that are disabled, and are not easily identified visually as immunocompromised.

11. Walmart's non-uniform policy of relying on security guards to identify who is considered "immunocompromised," adversely affects those that are disabled, but do not meet the subjective test of a Walmart security guard.

12. The reason for not joining all potential class members as Plaintiffs is that upon information and belief, there are hundreds of potential plaintiffs that have been harmed or in imminent harm, making it impractical to bring them before the Court. All plaintiffs are considered in a "high risk" category because they have an impaired immune system or "immunocompromised," during the COVID-19 global pandemic. (See Ex. 1, statements made via Twitter by those similarly situated to Plaintiff, and harmed by similar policies enacted by Walmart, Inc.).

13. Plaintiffs are even more high risk when shopping in grocery/department stores during the pandemic. The discriminatory actions complained of were taken in the line and scope of such Defendants' employment, agency or representation.

14. There are many persons (approximately in the thousands), both in Plaintiff's residential district and in regions surrounding Defendant who are similarly situated that have been affected and the question to be determined is one of common and general interest to many persons constituting the Class to which Plaintiff belongs and the group is so numerous as to make it impracticable to bring them all before the Court, for which reason Plaintiff initiates this litigation for all persons similarly situated pursuant to FRCP 23.

15. Issues and questions of law and fact common to the members of the class predominate over questions affecting individual members and the claims of Plaintiff's are typical of the claims of the proposed class. Issues and questions of law and fact include allegations made upon information and belief of Violation of the D.C. Human Rights Act and Violation of the American's with Disabilities Act.

16. Plaintiff seeks to maintain this action as a 23(b)class action as Walmart has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

17. The maintenance of this litigation as a class action will be superior to the other methods of adjudication in promoting the convenient administration of justice.

18. Plaintiff Cheketa McKnight-Nero will fairly and adequately assert and protect the interests of the Class.

## FACTUAL ALLEGATIONS

19. Cheketa McKnight., a resident of the state of Maryland is diabetic, has Polycythemia Vera, anemic, high blood pressure and has endured several strokes in her life. Consequently, she is considered "immunocompromised," or someone with a compromised health condition.

20. On May 12, 2020, McKnight-Nero traveled to the Walmart located on 5929 Georgia Ave, NW, Washington DC 20011. The location provides exclusive shopping for "Seniors and Customers with Compromised Health," to shop during the COVID-19 public health crisis. Exclusive shopping permits customers with compromised health conditions to shop, while reducing their risk of contracting COVID-19 during regular business hours.

21. The Georgia Avenue Walmart location designates Tuesday and Thursday between 6:00 am to 7:00 am, for "Seniors and Customers with Compromised Health," to exclusively shop.

22. On May 12, 2020, McKnight-Nero arrived at the Georgia Avenue location at approximately 6:20 am. Upon arriving to the entrance of the store, she was prohibited from entering the store by a contracted security guard from Brosnan Security Solutions.

23. Walmart contracts with Brosnan Security to perform security services at the Georgia Avenue location.

24. McKnight-Nero told the guard that she was an individual with a compromised immune system and that she should be allowed to shop during the exclusive timeframe for "Seniors and Customers with Compromised Health." The guard refused to allow McKnight-Nero into the store because he did not believe that she was a "...Custome[r] with Compromised Health."

25. After denied entry, McKnight-Nero requested to speak with a Walmart store manager. The Walmart guard refused to retrieve the manager. Minutes later, an older female shopper (appearing to be in her late 50's) came to the entrance of the store. The shopper told McKnight-Nero that she too had a compromised health condition, but the same security guard allowed her to enter the store.

26. McKnight-Nero continued to request that the Walmart guard allow her into the store for the exclusive shopping. McKnight-Nero informed the guard that if she was not allowed to shop during the designated hours, she would be unable to shop for essential items that she needed for the week. She also informed the Walmart guard that shopping outside of the exclusive hours could put her life at risk, by contracting the coronavirus. The Walmart guard still refused entry to McKnight-Nero.

27. Growing seriously concerned, McKnight-Nero decided to walk to a nearby police station, which is located adjacent to the Georgia Avenue, Walmart. The officers at the precinct told McKnight-Nero that she would have to call the emergency telephone line, in order for officers to meet her at the Georgia Avenue Walmart. McKnight-Nero called the emergency line and approximately two-to-three minutes later, three officers from the District of Columbia Police Department ("officers") appeared at the Georgia Avenue Walmart.

28. When the officers arrived, McKnight-Nero told the officers that the Walmart security guard was prohibiting her from entering the store between 6:00 am and 7:00 am, even though she was a "...Custome[r] with Compromised Health." She explained that she was disabled and had suffered from two previous strokes. She stated that she could provide the officers with her disability car tags as proof. But the officers stated that there was no need.

29. The officers asked the Walmart security guard whether he was aware that the sign allowed for "...Customers with Compromised Health" to enter the store between designated times. The security guard stated that he understood, but that the Walmart instructed him to allow only "seniors" to enter the store between 6:00 am and 7:00 pm.

30. The officers requested that the Walmart guard call the manager to come down and speak with them at the entrance of the store. After several minutes, a manager did not appear. The officers persistently asked the Walmart guard how long it would take for a manager to appear. But a Walmart manager never appeared.

31. The guard finally allowed McKnight-Nero to enter the store, but after 7:00 am.

32. McKnight-Nero walked into the store, but could not shop due to the stress and anxiety of shopping with the public, and possibly contracting coronavirus.

**PLAINTIFF'S CLAIMS**

**Count 1: Public Accommodations Violation - D.C. Human Rights Act**

33. Plaintiff incorporates all paragraphs herein *seriatim*.

34. Defendant, a private store servicing customers in the District of Columbia, by and through, its agents or supervisors, unlawfully refused entry to Plaintiff after she identified herself with a disability. Defendant did not perceive Plaintiff to have a disability prior to store entry, but did perceive others to have disabilities prior to store entry.

35. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Count 2: Disability Discrimination - D.C. Human Rights Act**

36. Plaintiff incorporates all paragraphs herein *seriatim*.

37. Defendant, by and through, its agents or supervisors, unlawfully refused entry to Plaintiff because it did not perceive Plaintiff to have a disability prior to store entry, but did perceive others to have disabilities prior to store entry.

38. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

### Count 3: Disability Discrimination – Americans with Disabilities Act

39. Plaintiff incorporates all paragraphs herein *seriatim.*

40. Defendant, by and through, its agents or supervisors, unlawfully refused entry to Plaintiff because it did not perceive Plaintiff to have a disability prior to store entry, but did perceive others to have disabilities prior to store entry.

41. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

### Count 4: Negligent Retention, Training, and Supervision

42. Plaintiff incorporates all paragraphs herein *seriatim.*

43. Defendant, by and through, its agents or supervisors, owed a duty of care to its patrons. Defendant breached that duty by failing to retain, train, and supervise its agents or employees about disability discrimination.

44. Defendants failure to retain, train and supervise agents or employees caused Plaintiff harm. As a result, Plaintiff suffered damages.

45.  Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate,

post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

## CLASS CLAIMS

### Count 5: Disparate Impact – Public Accommodation Discrimination
### D.C. Human Rights Act

46. Plaintiff incorporates all paragraphs herein *seriatim*.

47. Defendant, a private store servicing customers in the District of Columbia, by and through, its agents or supervisors, unlawfully refused entry to prospective customers after identifying a disability.

48. Defendant, a private store servicing customers in the District of Columbia, implements a policy that randomly selects customers that it perceives to have a disability, to shop in its stores during exclusive shopping hours for vulnerable COVID-19 customers.

49. Defendant's policy of selecting customers that it believes has a disability, disproportionally impacts those with unseen or non-visible disabilities, and increases their risk of harm with shopping with the general public.

50. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

### Count 6:  Disparate Impact – Disability Discrimination – D.C. Human Rights Act

51. Plaintiff incorporates all paragraphs herein *seriatim*.

52. Defendant, a private store servicing customers in the District of Columbia, by and through, its agents or supervisors, unlawfully refused entry to prospective customers after identifying a disability.

53. Defendant, a private store servicing customers in the District of Columbia, implements a policy that randomly selects customers that it perceives to have a disability, to shop in its stores during exclusive shopping hours for vulnerable COVID-19 customers.

54. Defendant's policy of selecting customers that it believes has a disability, disproportionally impacts those with unseen or non-visible disabilities, and increases their risk of harm with shopping with the general public.

55. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action

**Count 7:  Disparate Impact - Disability Discrimination - Americans with Disabilities Act**

56. Plaintiff incorporates all paragraphs herein *seriatim*.

57. Defendant, a private store servicing customers in the District of Columbia, by and through, its agents or supervisors, unlawfully refused entry to prospective customers after identifying a disability.

58. Defendant, a private store servicing customers in the District of Columbia, implements a policy that randomly selects customers that it perceives to have a disability, to shop in its stores during exclusive shopping hours for vulnerable COVID-19 customers.

59. Defendant's policy of selecting customers that it believes has a disability, disproportionally impacts those with unseen or non-visible disabilities, and increases their risk of harm with shopping with the general public.

60. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action

## PRAYER FOR RELIEF
## PLAINTIFF DEMANDS TRIAL BY JURY

Plaintiff, individually, and on behalf of all others similarly situated, prays that judgment be entered against Defendant Walmart, Inc. for all damages allowable (including statutory, actual, compensatory, nominal, and punitive) injunctive, expenses, attorney's fees, and for such other and further relief as may be just and proper.

Dated: June 10, 2020

By: */s/ Ikechukwu Emejuru*
Ikechukwu Emejuru
**Emejuru Law L.L.C.**
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
Telephone: (240) 638-2786
Facsimile: 1-800-250-7923
iemejuru@emejurulaw.com

Andrew Nyombi, Esq.
**KNA Pearl L.L.C.**
8701 Georgia Avenue
Suite 606
Silver Spring, MD 20910
Telephone: (301) 585-1568

Facsimile: 1-800-250-7923
anyombi@knapearl.com

*Attorneys for Plaintiff Individually
and others similarly situated*