**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CHEKETA MCKNIGHT-NERO, | ) | |
| | ) | |
| *Plaintiff*, | ) | Civ. No. 1:20-1541 (APM) |
| | ) | |
| *v.* | ) | |
| | ) | **MOTION TO DISMISS** |
| WALMART INC., | ) | |
| | ) | |
| *Defendant.* | ) | |

Defendant Walmart Inc. ("Walmart") respectfully moves, under Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff's Complaint.  For the reasons set forth in the attached memorandum, the allegations of the Complaint do not state a claim upon which relief can be granted, and Plaintiff lacks standing to pursue her claims for injunctive relief.  Dismissal is therefore appropriate as a matter of law.

/s/ John M. Majoras
John M. Majoras (Bar No. 474267)
Yaakov M. Roth (Bar No. 995090)
William G. Laxton, Jr. (Bar No. 982688)
Debra R. Belott (Bar No. 993507)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CHEKETA MCKNIGHT-NERO, | ) | |
| | ) | |
| | ) | Civ. No. 1:20-1541 (APM) |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | **MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES IN SUPPORT OF** |
| WALMART INC., | ) | **MOTION TO DISMISS** |
| | ) | |
| *Defendant.* | ) | |

John M. Majoras (Bar No. 474267)
Yaakov M. Roth (Bar No. 995090)
William G. Laxton, Jr. (Bar No. 982688)
Debra R. Belott (Bar No. 993507)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................. 1

FACTUAL ALLEGATIONS ............................................................................................. 2

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT .................................................................................................................... 4

I.   THE COMPLAINT DOES NOT STATE A CLAIM FOR DISABILITY DISCRIMINATION
     UNDER D.C. OR FEDERAL LAW (COUNTS 1–3 & 5–7) ........................................ 4

     A.   Plaintiff Has No Disparate Treatment Claim, Because She Alleges That
          the Guard Acted *Despite* Her Disability, Not *Based on* Her Disability ...................... 5

     B.   The Class-Wide Disparate Impact Claims Fail for the Same Reasons, and
          Also Because Plaintiff Has Alleged Only a Single, One-Off Incident ........................ 9

     C.   In All Events, Plaintiff Has No Standing To Seek Injunctive Relief ......................... 12

II.  THE COMPLAINT DOES NOT STATE A CLAIM FOR NEGLIGENT RETENTION,
     TRAINING, OR SUPERVISION (COUNT 4) ................................................................ 14

     A.   Under D.C. Law, Negligent Retention, Training, or Supervision Claims
          Must Be Predicated on the Agent's Commission of a Common-Law Tort .............. 14

     B.   In Any Event, the Negligent Retention, Training, and Supervision
          Allegations Are Too Conclusory To State a Claim ................................................. 16

CONCLUSION .................................................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*A.F. v. Starbucks Corp.*,
  No. 3:17-cv-1582, 2018 WL 1161385 (D. Ore. Mar. 5, 2018)..................................8

*Anderson v. Macy's, Inc.*,
  943 F. Supp. 2d 531 (W.D. Pa. 2013)......................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................4

*Black v. Dist. of Columbia*,
  466 F. Supp. 2d 177 (D.D.C. 2006).........................................................................15

*Borwick v. Univ. of Denver, Bd. of Trs.*,
  No. 11-cv-01216, 2013 WL 1149543 (D. Colo. Mar. 18, 2013)...........................11

*Boykin v. Fenty*,
  650 F. App'x 42 (D.C. Cir. 2016)................................................................6, 11, 12

*Boykin v. Gray*,
  895 F. Supp. 2d 199 (D.D.C. 2012).........................................................................5

*Bradley v. D.C. Pub. Sch.*,
  87 F. Supp. 3d 156 (D.D.C. 2015).............................................................................4

*Brewer v. Holder*,
  No. 08-cv-1747, 2013 WL 12399111 (D.D.C. Oct. 11, 2013)................................9

*Brown v. Argenbright Sec., Inc.*,
  782 A.2d 752 (D.C. 2001).......................................................................................16

*Carrington v. Pompeo*,
  No. 18-cv-0880, 2020 WL 1323140 (D.D.C. Mar. 20, 2020).................................12

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)...................................................................................................13

*Conn v. Am. Nat'l Red Cross*,
  149 F. Supp. 3d 136 (D.D.C. 2016)............................................................................6

*Daisley v. Riggs Bank, N.A.*,
  372 F. Supp. 2d 61 (D.D.C. 2005)...........................................................................15

*Doe 1 v. George Washington Univ.*,
  369 F. Supp. 3d 49 (D.D.C. 2019)...........................................................................15

*Doe v. Pfrommer*,
  148 F.3d 73 (2d Cir. 1998).......................................................................................10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
    28 F.3d 1268 (D.C. Cir. 1994)........................................................................12, 14

*Fiorillo v. United Techs. Corp.*,
    No. 3:13-cv-1287, 2015 WL 5797010 (D. Conn. Sept. 30, 2015)........................7, 8

*Gen. Dynamics Land Sys., Inc. v. Cline*,
    540 U.S. 581 (2004).................................................................................................8

*Goonewardena v. N. Shore Long Island Jewish Health Sys.*,
    No. 11-cv-2456, 2014 WL 1271197 (E.D.N.Y. Mar. 26, 2014).............................6

*\*Griffin v. Acacia Life Ins. Co.*,
    925 A.2d 564 (D.C. 2007) ....................................................................................15

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009).................................................................................................6

*Hendricks v. Stepp*,
    C/A No. 3:08-3299, 2009 WL 2224524 (D.S.C. July 22, 2009) ...........................8

*Holt v. Am. City Diner, Inc.*,
    No. 05-cv-1745, 2007 WL 1438489
    (D.D.C. May 15, 2007) .........................................................................................13

*Islar v. Whole Foods Mkt. Grp., Inc.*,
    217 F. Supp. 3d 261 (D.D.C. 2016) .....................................................................15

*\*Jefferson v. Stinson Morrison Heckler LLP*,
    249 F. Supp. 3d 76 (D.D.C. 2017) ..................................................................13, 14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...............................................................................................12

*M.J. v. Dist. of Columbia*,
    401 F. Supp. 3d 1 (D.D.C. 2019)............................................................................4

*Martin v. Dist. of Columbia*,
    968 F. Supp. 2d 159 (D.D.C. 2013) .....................................................................15

*Mitchell v. DCX, Inc.*,
    274 F. Supp. 2d 33 (D.D.C. 2003) .......................................................................10

*Nat. Res. Def. Council v. Pena*,
    147 F.3d 1012 (D.C. Cir. 1998) ...........................................................................12

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)...............................................................................................13

*Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Eng'rs, P.C.*,
    950 F. Supp. 393 (D.D.C.1996)..............................................................................6

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Perez v. D.C. Dep't of Emp't Servs.*,
   305 F. Supp. 3d 51 (D.D.C. 2018) ...................................................................5

*Raihan v. George Washington Univ.*,
   324 F. Supp. 3d 102 (D.D.C. 2018) ...............................................................16

*Raytheon Co. v. Hernandez*,
   540 U.S. 44 (2003) ...........................................................................................7

*Reeves v. MV Transp., Inc.*,
   845 F. Supp. 2d 104 (D.D.C. 2012) ...........................................................6, 14

*Savoy v. VMT Long Term Care Mgmt. Co.*,
   522 F. Supp. 2d 211 (D.D.C. 2007) ...............................................................15

*Schmidt v. U.S. Capitol Police Bd.*,
   826 F. Supp. 2d 59 (D.D.C. 2011) ...................................................................4

*Search v. Uber Techs., Inc.*,
   128 F. Supp. 3d 222 (D.D.C. 2015) ...............................................................17

*Seth v. Dist. of Columbia*,
   No. 18-cv-1034, 2018 WL 4682023 (D.D.C. Sept. 28, 2018) .....................6, 10

*Spears v. E-Z Mart Stores, Inc.*,
   No. 12-cv-17, 2013 WL 1309398 (N.D. Okla. March 26, 2013) .....................8

*Speelman v. United States*,
   461 F. Supp. 2d 71 (D.D.C. 2006) ...................................................................4

*Steele v. Isikoff*,
   130 F. Supp. 2d 23 (D.D.C. 2000) .................................................................14

*Stevens v. Sodexo, Inc.*,
   846 F. Supp. 2d 119 (D.D.C. 2012) ...............................................................17

*Sutton v. United Air Lines, Inc.*,
   527 U.S. 471 (1999) ...........................................................................................9

*Ward v. Wells Fargo Bank, N.A.*,
   89 A.3d 115 (D.C. 2014) .................................................................................12

*Ware v. Hyatt Corp.*,
   No. 12-cv-0395, 2013 WL 12321372 (D.D.C. Mar. 27, 2013) .....................16

*Wash. Convention Ctr. Auth. v. Johnson*,
   953 A.2d 1064 (D.C. 2008) ...............................................................................6

*Young v. Covington & Burling, LLP*,
   689 F. Supp. 2d 69 (D.D.C. 2010) .................................................................15

iv

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

STATUTES

42 U.S.C. § 12102..................................................................................................8

42 U.S.C. § 12182..............................................................................................5, 7, 9

42 U.S.C. § 12188................................................................................................14

42 U.S.C. § 2000a-3.............................................................................................14

D.C. Code § 2-1402.31......................................................................................5, 7, 8

D.C. Code § 2-1402.68..........................................................................................10

**<u>INTRODUCTION</u>**

This case involves what Plaintiff herself calls Walmart's "laudable" effort to facilitate safe shopping during the COVID-19 pandemic, including by voluntarily offering "exclusive shopping hours" for "seniors and customers with compromised health conditions."  Dkt. 1 ("Compl.") at 1. Plaintiff alleges that her disabilities qualify her for that program, but that, on a single occasion, a third-party security guard at a Walmart store in D.C. mistakenly did not think so, and barred Plaintiff from entering the store until expiration of the designated hour.  Based on that incident, Plaintiff asserts individual and putative class claims for disability discrimination under D.C. and federal law, and further alleges that Walmart negligently retained, trained, or supervised this guard.

While Plaintiffs' alleged negative experience at this store is regrettable, it does not amount to disability discrimination.  By her own account, Plaintiff was treated the same as able-bodied customers because the guard thought she was *not* disabled:  He assigned her to the regular shopping cohort *despite* her alleged disabilities, not *because of* them.  Plaintiff cannot maintain class-wide disparate impact claims, either, when her allegation is that a set of disabled people were treated *the same as* non-disabled customers.  And, even if that could be a viable disparate impact theory, it cannot be predicated solely on her own singular experience, with no plausible allegation that any other disabled persons were excluded.  Finally, because Plaintiff has failed to plausibly allege a likelihood of future harm based on a single, one-off, alleged mistake by a single guard, she lacks standing to seek injunctive relief (which is the *only* relief available under the federal statute).

Nor can Plaintiff avoid these deficiencies by alleging that Walmart's negligent retention, training, or supervision of the security guard caused him to discriminate against her.  The law is clear in the District that such claims must rest on an independent, common-law tort committed by the employee or agent; no such tort is alleged here.  Moreover, Plaintiff's claims of negligence are entirely conclusory and therefore would compel dismissal in all events.

**FACTUAL ALLEGATIONS**

On a motion to dismiss, the Complaint's well-pleaded factual allegations are assumed to be true.  The sum and substance of those allegations is that a contracted security guard at a Walmart store in the District of Columbia wrongly refused on a single occasion to allow Plaintiff Cheketa McKnight-Nero to participate in the store's exclusive shopping hour for seniors and customers with compromised immune systems, because he did not believe that she was eligible.

Plaintiff is a Maryland resident who allegedly suffers from various health conditions—including diabetes, high blood pressure, and a rare form of blood cancer—that compromise her immune system.  (Compl. ¶ 19.)  She alleges that, on May 12, 2020, she visited a Walmart store in D.C. at approximately 6:20 am, intending to take advantage of the store's special shopping hour, which she describes as being reserved for "Seniors and Customers with Compromised Health" so they can shop more safely during the coronavirus pandemic.  (Compl. ¶¶ 20–22.)  That "laudable" program, according to Plaintiff, "provides exclusive shopping periods between the time of 6:00 am to 7:00 am, for [s]enior citizens over the age of 65 and people who have an impaired immune system, or identify as 'immunocompromised.'"  (Compl. at 1 & ¶ 8.)

Plaintiff alleges, however, that when she attempted to shop during this designated shopping period, "she was prohibited from entering the store by a contracted security guard from Brosnan Security Solutions," a company with which Walmart contracts to "perform security services" at the store in question.  (Compl. ¶¶ 22–23.)  The Complaint initially claims that the guard refused to admit Plaintiff because he "did not believe" that she had compromised health.  (Compl. ¶ 24.)  It later alleges that the guard wrongly understood that "only 'seniors'" could participate in the special shopping hour.  (Compl. ¶ 29.)  In either event, the guard concluded that Plaintiff was not eligible to enter the store before 7:00 am, and therefore kept her from entering until that time.

2

Rather than calling the Walmart store or corporate headquarters, Plaintiff responded by calling the police emergency line.  (Compl. ¶ 27.)  Officers arrived and allegedly asked the security guard to call a manager.  (Compl. ¶ 30.)  "After several minutes, a manager did not appear."  (*Id.*)  By this time, the special shopping hour had ended, so the guard allowed Plaintiff to enter the store.  (Compl. ¶ 31.)  Plaintiff says, however, that although she did ultimately enter the store, she "could not shop due to the stress and anxiety of shopping with the public."  (Compl. ¶ 32.)

The Complaint does not say whether or how Plaintiff acquired the "essential items that she needed for the week."  (Compl. ¶ 26.)  Nor does the Complaint allege any other actual or desired visits to the Walmart store in question, or any other Walmart stores.  Plaintiff does not say, either, whether she has taken advantage of Walmart's delivery or curbside-pickup options.

Based on the single episode described above, Plaintiff asserts two sets of claims.  *First*, she contends that the guard's refusal of entry was unlawful disability discrimination under the D.C. Human Rights Act ("DCHRA") (Counts 1–2) and the Americans with Disabilities Act ("ADA") (Count 4).  In her words: Walmart "refused entry to Plaintiff because it did not perceive Plaintiff to have a disability," even though she "identified herself with a disability."  (Compl. ¶¶ 34, 37, 40.)  *Second*, Plaintiff claims Walmart is liable for allegedly failing "to retain, train, and supervise its agents or employees about disability discrimination."  (Compl. ¶ 43.)

In Counts 5–7, Plaintiff restates her disability discrimination counts as "class claims" on behalf of a putative class of customers "with unseen or non-visible disabilities."  (Compl. ¶¶ 49, 54, 59.)  While never defined, the class appears to comprise immunocompromised persons who "do not meet the subjective test of a Walmart security guard."  (Compl. ¶¶ 10–12.)  To allege this class's existence, Plaintiff cites 5 Twitter posts—none about Walmart—complaining about being challenged regarding eligibility for special shopping programs at *other* retailers.  (Dkt. 1-1.)

3

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires plaintiffs to allege facts—not mere legal conclusions—that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bradley v. D.C. Pub. Sch.*, 87 F. Supp. 3d 156, 159–60 (D.D.C. 2015).

A motion to dismiss for lack of standing is properly filed under Rule 12(b)(1), as standing goes to the court's subject matter jurisdiction. *M.J. v. Dist. of Columbia*, 401 F. Supp. 3d 1, 7–8 (D.D.C. 2019). In evaluating such a motion, the court "need not accept factual inferences" unsupported by the alleged facts, or legal conclusions couched as facts. *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). Allegations bearing on jurisdiction must be scrutinized especially closely. *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011).

## ARGUMENT

I.    **THE COMPLAINT DOES NOT STATE A CLAIM FOR DISABILITY DISCRIMINATION UNDER D.C. OR FEDERAL LAW (COUNTS 1–3 & 5–7).**

The heart of the Complaint is the assertion that Walmart unlawfully discriminated based on disability when a security guard refused to allow Plaintiff to participate in the special shopping hour. The first three counts appear to assert disparate treatment discrimination based on disability. Those claims fail because the allegations make clear that the guard was, if anything, acting *despite* Plaintiff's disabilities, not *because of* them, when he treated her the same as able-bodied customers; the guard either did not believe she was disabled or did not understand that her disability made her eligible for exclusive shopping. As for the putative "class claims," they fail

4

for the same basic reason: Plaintiff does not allege that disabled customers were treated worse than able-bodied customers, and so no adverse impact has been identified.  Moreover, one individual's experience with an allegedly "non-uniform" policy cannot ground a disparate impact claim.  In both these respects, Walmart analyzes together the ADA and DCHRA, because the two statutes mirror one another.  *Boykin v. Gray*, 895 F. Supp. 2d 199, 218–19 (D.D.C. 2012).  Independently, Plaintiff does not (and cannot plausibly) allege, based on the single mistake of a single guard, that she is likely to be excluded from Walmart's exclusive shopping in the future; she therefore lacks standing to seek injunctive relief—the only form of relief authorized under Title III of the ADA.[1]

### A.    Plaintiff Has No Disparate Treatment Claim, Because She Alleges That the Guard Acted *Despite* Her Disability, Not *Based on* Her Disability.

Both the ADA and the DCHRA prohibit places of public accommodation from engaging in disparate treatment of individuals with disabilities.  Title III of the ADA provides that "[n]o individual shall be discriminated against *on the basis of disability* in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a) (emphasis added).  Likewise, the DCHRA prohibits any "place of public accommodation" from denying a person "full and equal enjoyment" of "goods, services, facilities, privileges, advantages, [or] accommodations," if the denial is made "wholly or partially for a discriminatory reason *based on the actual or perceived ... disability*" of the individual.  D.C. Code § 2-1402.31 (emphasis added).

---

[1] Plaintiff purports to assert independent (though substantively identical) DCHRA claims for "Public Accommodations" discrimination (Counts 1 and 5) and "Disability Discrimination" (Counts 2 and 6).  These are not distinct claims; they are different components of the same claim.  The DCHRA forbids discrimination *based on disability* with respect to full and equal enjoyment of *public accommodations*.  D.C. Code § 2-1402.31(a).  In other words, disability is the protected trait; public accommodations are what must be afforded on equal terms.  Count 1 is thus duplicative of Count 2, and Count 5 is duplicative of Count 6.  Defendant analyzes these claims together.  And, at minimum, the duplicative claims must be dismissed.  *See Perez v. D.C. Dep't of Emp't Servs.*, 305 F. Supp. 3d 51, 59 (D.D.C. 2018) (dismissing duplicative claims).

As this text suggests, both statutes require a causal link between a plaintiff's disability and a defendant's denial of equal goods and services. *See, e.g.*, *Boykin v. Fenty*, 650 F. App'x 42, 44 (D.C. Cir. 2016) (affirming dismissal of discrimination claim where plaintiffs failed to plausibly allege that decision to close a shelter was "because of the[ir] disabilities"); *Conn v. Am. Nat'l Red Cross*, 149 F. Supp. 3d 136, 142 (D.D.C. 2016) (holding that plaintiff must show that allegedly discriminatory conduct would not have occurred "but for" plaintiff's disability); *Reeves v. MV Transp., Inc.*, 845 F. Supp. 2d 104, 107 (D.D.C. 2012) ("Absent allegations to link defendants' conduct with plaintiff's disability, ... the ADA claim fails."); *Seth v. Dist. of Columbia*, No. 18-cv-1034, 2018 WL 4682023, at *11 (D.D.C. Sept. 28, 2018) (defendant's actions must have been taken "at least in part 'because of,' not merely 'in spite of,'" the plaintiff's disability), *aff'd*, 2020 WL 2611716 (D.C. Cir. Apr. 21, 2020); *Goonewardena v. N. Shore Long Island Jewish Health Sys.*, No. 11-cv-2456, 2014 WL 1271197, at *8 (E.D.N.Y. Mar. 26, 2014) ("[I]t is not enough to allege that one has a disability and one was denied services. Rather, it is critical that a plaintiff allege that he was denied services *because of* his disability."). Accordingly, if the exclusion of a plaintiff from a public accommodation was not *because of* the plaintiff's disability, that plaintiff cannot state a disparate treatment claim under the ADA or DCHRA.[2]

---

[2] As explained in *Conn*, recent Supreme Court opinions have clarified that the ADA's "on the basis of" standard is properly understood as requiring plaintiffs to establish "but-for" causation. 149 F. Supp. 3d at 142 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). Because the DCHRA is "applied in the same manner as the parallel federal antidiscrimination provisions," *Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Eng'rs, P.C.*, 950 F. Supp. 393, 405 (D.D.C.1996), the D.C. Court of Appeals can be expected to follow suit. But the precise measure of causation does not make a difference here. Even under the prior, "determinative influence" causation standard for DCHRA claims, a plaintiff was still required to plead sufficient facts to establish that "the plaintiff's [disability] ... actually played a role in the [defendant's] decision-making process and had a determinative influence on the outcome." *Wash. Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1073 (D.C. 2008); *see also Seth*, 2018 WL 4682023, at *11 (explaining that the "determinative influence" standard still requires plaintiff to show that "the complained-of discrimination was based on ... disability").

Here, Plaintiff does not allege facts suggesting that she was excluded "for a discriminatory reason based on ... disability," D.C. Code § 2-1402.31(a), or "on the basis of disability," 42 U.S.C. § 12182(a).  Quite the opposite: Her Complaint squarely *forecloses* such a claim, recounting that the security guard "refused to allow [her] into the store because he did not believe that she was" immunocompromised.  (Compl. ¶ 24.)  That is to say, he refused entry because he "did not perceive Plaintiff to have a disability."  (Compl. ¶¶ 34, 37, 40.)  That does not constitute disparate treatment that violates the statutes.  The DCHRA and ADA, as explained, forbid denying someone full and equal enjoyment of a public accommodation *because of* that person's disability.  Plaintiff alleges that she was required to shop with the general public, like able-bodied customers, *notwithstanding* that she identified herself as disabled and therefore should have been permitted to shop early under the program.  Because her disability was admittedly not the cause of her exclusion from the special shopping program—she would have been denied entry, in just the same way, if she had *not* been disabled—Plaintiff has not stated a claim for disparate treatment on the basis of disability.

The caselaw bears out this principle, by rejecting discrimination claims against defendants who either did not know, or did not believe, that a plaintiff was disabled.  As the Supreme Court explained, a defendant cannot act "because of [a] disability" if she is unaware of the disability; in such scenario, the disabled person "cannot, *ipso facto*, have been subject to disparate treatment." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003).  For that reason, courts do not hesitate to dismiss disability discrimination claims premised on allegations that the defendant did not know or believe that the plaintiff was disabled.  In *Fiorillo v. United Technologies Corp.*, for example, the court dismissed a claim premised on the denial of disability benefits, where the complaint indicated that the benefits were denied because the defendant "found her to be 'a malingerer,'" which "appear[s] to indicate that [the defendant] denied her benefits not *because* of her physical

and mental disabilities, as is necessary to sustain an ADA claim, but because it believed that she was *not* disabled." No. 3:13-cv-1287, 2015 WL 5797010, at *10 n.9 (D. Conn. Sept. 30, 2015) ; *see also A.F. v. Starbucks Corp.*, No. 3:17-cv-1582, 2018 WL 1161385, at *5 (D. Ore. Mar. 5, 2018) (dismissing where plaintiff failed to "allege[] any facts to suggest that Defendant's employees *knew* about Plaintiff's disability"); *Spears v. E-Z Mart Stores, Inc.*, No. 12-cv-17, 2013 WL 1309398, at *4 (N.D. Okla. March 26, 2013) (dismissing where plaintiff "asserts that [defendant] did *not* believe he was disabled"); *Hendricks v. Stepp*, C/A No. 3:08-3299, 2009 WL 2224524, at *5 (D.S.C. July 22, 2009) ("The defendants cannot have discriminated ... on the *basis* of a disability if they knew nothing about it."). Plaintiff's claims fail for the same reason.

One paragraph of the Complaint advances a contradictory allegation about the reasons for the guard's action—but the result is the same. After alleging that the guard excluded her because he "did not believe" she was disabled (Compl. ¶ 24), Plaintiff later alleges that the guard claimed he had been advised only to permit "seniors" to enter the store during the designated hour (Compl. ¶ 29). Assuming the latter version of events, it remains the case that the guard did not deny access to the store "based on," or "on the basis of," Plaintiff's disability. Insofar as the guard believed that the exclusive shopping program was limited to seniors, he denied access to Plaintiff based on her *age*, not her *disability*.[3] Again, her disability was not in any sense the cause of the guard's action; it was, on this alternative account, entirely irrelevant to his determination.

Finally, the Complaint's language concerning how the guard "perceive[d]" Plaintiff and "others" (Compl. ¶¶ 34, 37, 40) appears to be invoking the statutory rule that "disability" includes "being regarded as having" a disabling condition. 42 U.S.C. § 12102(1)(C); *see also* D.C. Code

---

[3] Although Plaintiff has not asserted an age discrimination claim, amending her Complaint to add such a claim would be futile, because the law permits "favoring the old over the young." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 584 (2004).

§ 2-1402.31(a) (prohibiting discrimination based on "actual or perceived ... disability"). But once again, Plaintiff's claim is backwards. That statutory rule means that a person who is *not* disabled remains protected from discrimination if someone "mistakenly believes" she *is* disabled and acts on that "misperceptio[n]." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). By contrast, Plaintiff's claim here is that she *is* disabled, but was mistakenly regarded as *not* disabled and, on that basis, was treated the same as the able-bodied customers by being told to shop during regular store hours. The "regarded as" prong thus does not help Plaintiff's case. Since the guard allegedly did not regard her as disabled, the guard did not act based on disability—actual or perceived—and Plaintiffs' disparate treatment claims must be dismissed as a matter of law.

### B. The Class-Wide Disparate Impact Claims Fail for the Same Reasons, and Also Because Plaintiff Has Alleged Only a Single, One-Off Incident.

In Counts 5–7, Plaintiff repeats her allegations of disability discrimination in parallel to Counts 1–3, but this time characterizes them as "class claims." If these are simply intended as the class-wide versions of the same claims already addressed, they necessarily fail too. *See Brewer v. Holder*, No. 08-cv-1747, 2013 WL 12399111, at *2 (D.D.C. Oct. 11, 2013) ("[O]nce a plaintiff's individual claims fail, he cannot be an adequate representative for class claims under Rule 23.") The Complaint does, however, use somewhat different terminology in Counts 5–7, alluding for the first time to "disparate impact." To the extent that these counts are intended to state distinct claims on a distinct theory, they also fail as a matter of law and must be dismissed.

Both the ADA and the DCHRA authorize claims for "disparate impact" discrimination. Title III of the ADA defines discrimination to include the use of "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying" the public accommodation. 42 U.S.C. § 12182(b)(2)(A)(i). And the DCHRA provides that "[a]ny practice which has the effect or consequence of violating any of

the provisions of this chapter shall be deemed to be an unlawful discriminatory practice." D.C. Code § 2-1402.68. A plaintiff may thus state a disparate impact claim by alleging facts showing that a specific practice has a disproportionate, adverse impact on persons with disabilities with respect to the equal enjoyment of a public accommodation. *See Seth*, 2018 WL 4682023, at \*12; *Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 47 (D.D.C. 2003). In short, public accommodations cannot adopt even well-intentioned policies that have the effect of preventing the disabled from obtaining service equal to what is made available to individuals who are not disabled. *See Doe v. Pfrommer*, 148 F.3d 73, 83 (2d Cir. 1998) (explaining that the purpose of the ADA is "to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied").

Plaintiff, however, pleads just the *opposite*. She is not challenging a policy that allegedly screens out disabled people from equal enjoyment of a public accommodation, disproportionately burdening the disabled relative to the able-bodied. Rather, she challenges a screening mechanism for access to a special program designed for seniors and individuals with compromised health, on the ground that it resulted in one "false negative." That cannot support a claim of disparate impact on the disabled—or even a subset of disabled people—because it does not suggest that Walmart's policies disparately exclude the disabled from full, equal access. To the contrary, *all* able-bodied persons (other than seniors, who are granted access regardless of disability) are excluded from the exclusive shopping hour, and Plaintiff was admittedly allowed to enter the Walmart and shop with everyone else, during regular hours. (Compl. ¶¶ 31–32.) At bottom, Plaintiff cannot state disparate impact claims for the same reason she cannot state disparate treatment claims: Her disability did not screen her out from full or equal enjoyment of the public accommodation. She is complaining that Walmart's policies resulted in her being treated *the same as* non-disabled persons, *even though she is disabled*. That is not a disparate impact within the meaning of the statutes.

Absent any plausible allegation that Walmart's exclusive-shopping screening policy has the effect of favoring non-disabled individuals over those with disabilities, Plaintiff cannot state a viable disparate impact claim. *See Fenty*, 650 F. App'x at 44 (affirming dismissal of complaint that "failed to allege facts suggesting that the closure affected a greater proportion of disabled individuals than non-disabled"); *Borwick v. Univ. of Denver, Bd. of Trs.*, No. 11-cv-01216, 2013 WL 1149543, at *10 (D. Colo. Mar. 18, 2013) (rejecting disparate impact claim where plaintiff failed to "illustrate how a policy operated to favor non-disabled individuals over disabled ones" or "identify even a single non-disabled comparator").

Even if Plaintiff's novel disparate impact theory were viable, it would fail here for another reason: She has failed to allege any facts to suggest that Walmart's challenged screening practice has erroneously excluded *any other person*, let alone that such exclusions have disproportionately impacted disabled persons. While Plaintiff speculates there may be "hundreds" or "thousands" of potential class members (Compl. ¶¶ 12, 14), the only other individual with a "compromised health condition" identified in the Complaint was, in fact, permitted to enter the store during the exclusive shopping period. (Compl. ¶ 25.) And though Plaintiff asserts that she has attached an exhibit to her Complaint capturing "statements made via Twitter by those similarly situated to Plaintiff" (Compl. ¶ 12), the exhibit actually shows no such thing. *None* of the five tweets offered by Plaintiff indicates that any other immunocompromised individuals were denied entrance to Walmart; each tweet is about a *different company*. *See* Dkt. 1-1.

Since the Complaint is devoid of factual allegations reasonably suggesting that Walmart's screening policy has "affected a greater proportion of disabled individuals than non-disabled," and because "[a]llegations about the [plaintiff's] individual experiences... say nothing about whether the [challenged conduct] had a disparate impact on persons with disabilities," Plaintiff's disparate

impact claims must be dismissed. *Fenty*, 650 F. App'x at 44 (affirming dismissal of disparate impact claim); *see also Carrington v. Pompeo*, No. 18-cv-0880, 2020 WL 1323140, at *7–8 (D.D.C. Mar. 20, 2020) (holding that complaint failed to state a cognizable disparate impact claim where it was "based entirely on [plaintiff's] own promotion experience" and failed to allege an "observed statistical disparity" between treatment of disabled and non-disabled individuals); *Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 128–29 (D.C. 2014) (holding that dismissal of DCHRA claim is appropriate when plaintiffs offer only conclusory allegations of disparate impact).

**C.      In All Events, Plaintiff Has No Standing To Seek Injunctive Relief.**

To the extent that any of Plaintiff's discrimination theories survives dismissal, her request for injunctive relief cannot.  And, because injunctive relief is the only relief authorized by Title III of the ADA, that means Plaintiff's federal claims (Counts 3 & 7) must be dismissed regardless.

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To establish standing, a plaintiff must show, among other things, that she has suffered an "injury in fact" that is both "concrete and particularized," and "actual or imminent," not conjectural or hypothetical.  *Id.*  When a plaintiff seeks injunctive relief, this requires her to allege not just past harm, but also "a likelihood of future *violations* of [her] rights."  *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994); *see also Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1022 (D.C. Cir. 1998) ("[A] party has standing to seek injunctive relief only if the party alleges ... a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury.").

Here, Plaintiff purports to seek injunctive relief as to each cause of action.  (Compl. ¶¶ 16, 35, 38, 41, 45, 50, 55, 60.)  Yet she fails to allege facts establishing a likelihood of future injury from Walmart's exclusive shopping program.  Indeed, she does not allege *any* of the factors that courts look to in evaluating standing in Title III ADA cases: proximity to the store, past patronage

of the store, definitive plans to return, or frequency of nearby travel.  *See Anderson v. Macy's, Inc.*,
943 F. Supp. 2d 531, 539 (W.D. Pa. 2013); *Jefferson v. Stinson Morrison Heckler LLP*, 249 F.
Supp. 3d 76, 81 (D.D.C. 2017).  Plaintiff does not live in the District.  (Compl. ¶ 3.)  She does not
allege she has ever visited this Walmart store in the past.  Nor does she allege that she would like
to do so again in the future, or even that her fear of being screened out of the special shopping hour
has deterred her from returning.  This Court has rejected standing even in the face of unsupported
assertions of a plaintiff's intent "to return to a defendant's place of public accommodation."
*Jefferson*, 249 F. Supp. 3d at 81; *see also Holt v. Am. City Diner, Inc.*, No. 05-cv-1745, 2007 WL
1438489, at *6 (D.D.C. May 15, 2007) (plaintiff lacked standing where alleged intent to return
was unaccompanied by supporting facts, like preference for the restaurant's food or any attempt
to communicate accessibility concerns to defendant before suing).  But here, Plaintiff does not
even make that bare assertion, and thus there is truly nothing in the Complaint that would support
an inference that Plaintiff faces a threat of future injury.

Actually, Plaintiff's standing problems run deeper; this is not merely a technical pleading
defect.  Even if Plaintiff had plausibly alleged a desire to return to the Walmart store for exclusive
shopping, the fact that she may have been wrongfully excluded once—due to a single guard, on a
single occasion, who misperceived her eligibility—says nothing about the likelihood that another
guard will make that mistake, or even that the *same* guard would make the same mistake again.
After all, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy
regarding injunctive relief."  *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974).  And Plaintiff offers
no basis to believe that Walmart's allegedly "non-uniform" policy (Compl. ¶ 8) would again result
in her wrongful exclusion from "exclusive shopping."  *Cf. City of Los Angeles v. Lyons*, 461 U.S.
95, 105 (1983) (prior interaction with police did not establish "real and immediate threat that"

plaintiff "would again be stopped" and subjected to allegedly unconstitutional tactic); *Fair Emp't Council*, 28 F.3d at 1273–74 (plaintiffs lacked standing where they failed to allege a "likelihood that [defendant] may discriminate against the individual plaintiffs in the future"). A plaintiff must establish "a real or immediate threat that [she] will be wronged again," *Jefferson*, 249 F. Supp. 3d at 81, and Plaintiff's one-off interaction with a single, allegedly misinformed security guard at a single store does not clear that bar.

Plaintiff accordingly lacks standing to seek injunctive relief. But this requires more than just the dismissal of particular remedial requests. Injunctive relief is the sole remedy available to private plaintiffs under Title III of the ADA. *See* 42 U.S.C. § 12188 (incorporating § 2000a-3(a), which authorizes "a civil action for preventive relief"); *Reeves*, 845 F. Supp. 2d at 107 ("Even if plaintiff had adequately alleged an ADA claim, he cannot recover monetary damages under Title III because 'only injunctive relief is available for violations of Title III.'"). Plaintiff's lack of standing therefore requires dismissal of her ADA claims (Counts 3 & 7) in their entirety.

## II.  THE COMPLAINT DOES NOT STATE A CLAIM FOR NEGLIGENT RETENTION, TRAINING, OR SUPERVISION (COUNT 4).

Plaintiff also alleges that, as a result of Walmart's allegedly negligent retention, training, or supervision of its security guard, the guard discriminated against her in violation of the ADA and DCHRA. (Compl. ¶¶ 43–44.) That tort claim legally fails for at least two reasons.

### A.  Under D.C. Law, Negligent Retention, Training, or Supervision Claims Must Be Predicated on the Agent's Commission of a Common-Law Tort.

To start, the guard's alleged "disability discrimination" (Compl. ¶ 43) is not a cognizable predicate for a negligent retention, training, or supervision claim. Most obviously, if there was no disability discrimination, this claim necessarily fails as derivative. *Steele v. Isikoff*, 130 F. Supp. 2d 23, 37 (D.D.C. 2000) (dismissing negligent hiring and supervision counts after rejecting "first eight counts," because "[w]ithout any primary liability, there can be no derivative liability").

Even more importantly, the D.C. Court of Appeals has limited these tort claims to situations where the employee or agent has committed an *independent common-law tort*. *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576–79 (D.C. 2007) (holding that "a claim for negligent supervision" must be "based on a separate common law tort" committed by employee). By contrast, a *statutory* violation cannot give rise to a negligent supervision claim and, thus, a "negligent supervision claim cannot be predicated on a violation of the DCHRA." *Id.* Following that principle of D.C. law, this Court has regularly dismissed negligent retention, training, and supervision claims based on alleged discrimination or other statutory misconduct by the defendant's employee or agent. *See Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 87 (D.D.C. 2019) (dismissing negligent training and supervision claims because they were "not predicate[d] ... on a common law cause of action"); *Islar v. Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 266 (D.D.C. 2016) (dismissing negligent retention and supervision claim not premised on independently tortious conduct); *Young v. Covington & Burling, LLP*, 689 F. Supp. 2d 69, 86–87 (D.D.C. 2010) (dismissing negligent supervision claim based on alleged Title VII violation); *Martin v. Dist. of Columbia*, 968 F. Supp. 2d 159, 166 (D.D.C. 2013) (same); *Savoy v. VMT Long Term Care Mgmt. Co.*, 522 F. Supp. 2d 211, 213 n.3 (D.D.C. 2007) ("it is settled that such a claim [for negligent supervision] cannot, as a matter of law, be predicated solely on a violation of an anti-discrimination statute"). Indeed, this Court applied that rule even before *Griffin* definitively established it. *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 81 (D.D.C. 2005) (dismissing negligent supervision claim due to failure to identify "legally cognizable tort resulting from [defendant's] alleged negligence"); *Black v. Dist. of Columbia*, 466 F. Supp. 2d 177, 181 (D.D.C. 2006) ("Although these torts are actionable in the District of Columbia, they must be predicated upon tortious acts by employees.").

This well-established legal rule precludes Plaintiff from advancing a negligent retention, training, or supervision claim that is premised on alleged violations of the ADA or DCHRA.  And that alone compels the dismissal of Count 4.

### B. In Any Event, the Negligent Retention, Training, and Supervision Allegations Are Too Conclusory To State a Claim.

Even setting aside the above deficiency, the Complaint does not plead facts that satisfy the elements of a negligent retention, training, or supervision claim.  In this regard, the Complaint is entirely conclusory and does nothing more than recite labels and conclusions.

To state a claim for negligent retention, training, or supervision, a plaintiff must plead facts showing "that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee."  *Raihan v. George Washington Univ.*, 324 F. Supp. 3d 102, 114–15 (D.D.C. 2018) (quoting *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001)); *Ware v. Hyatt Corp.*, No. 12-cv-0395, 2013 WL 12321372, at *17 (D.D.C. Mar. 27, 2013).  Here, Plaintiffs' Complaint says *not a word* about Walmart's alleged knowledge of the Brosnan security guard's actions towards Plaintiff or any similarly-situated individuals. Indeed, it does not allege that a single person with disabilities was improperly excluded from the special shopping hour by any security guard prior to Plaintiff's experience.  Absent some plausible allegations that Walmart was on notice of the security guard's allegedly "incompetent" behavior, the claims for negligent retention, training, and supervision must be dismissed.

Plaintiff's negligence claims fail for the additional reason that the Complaint is devoid of any factual allegations about the allegedly negligent retention, training, or supervision of the security guard.  It is silent as to what training or supervision the guards receive, when they receive it, from whom, and in what respects that training and supervision are allegedly deficient.  It further

fails to identify training or supervision programs or policies that would have prevented the alleged harm to Plaintiff.  These negligence claims fail to clear the *Iqbal* bar.  *See Search v. Uber Techs., Inc.*, 128 F. Supp. 3d 222, 231 (D.D.C. 2015) (dismissing negligent training and supervision claims where plaintiff failed to "offer any specific allegations about [defendant's] training and supervision programs," and did "not assert that any particular training or supervisory programs would have prevented" alleged injury); *Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 128 (D.D.C. 2012) (dismissing negligent supervision claim that consisted only of "bare, conclusory assertions").

Plaintiff may be tempted to infer that Walmart's retention, training, or supervision "*must* have been inadequate if they failed to" prevent the alleged wrong.  *Search*, 128 F. Supp. 3d at 230.  But, as Judge Boasberg explained, that "*res ipsa loquitur*-style logic falls short of the threshold required to survive a Rule 12(b)(6) motion."  *Id.*  To hold otherwise would "subject a defendant to costly and potentially meritless litigation" based exclusively on a plaintiff's invocation of "magic words" like "negligent hiring."  *Id.* at 231.  The *Iqbal* pleading standard requires more.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff's Complaint in its entirety.

August 12, 2020

Respectfully submitted,

/s/ John M. Majoras
John M. Majoras (Bar No. 474267)
Yaakov M. Roth (Bar No. 995090)
William G. Laxton, Jr. (Bar No. 982688)
Debra R. Belott (Bar No. 993507)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939

*Attorneys for Defendant*