**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHEKETA MCKNIGHT-NERO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 20-cv-1541 (APM)** |
| ) | |
| **WALMART, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

Plaintiff Cheketa McKnight-Nero filed this putative class action lawsuit against Defendant

Walmart, Inc. ("Walmart") after she was denied access to a Washington, D.C., Walmart location's

exclusive shopping hour for customers with compromised health during the COVID-19 pandemic.

The Complaint alleges violations of (1) the Americans with Disabilities Act of 1990, 42 U.S.C.

§§ 12101 *et seq.* ("ADA"); (2) the District of Columbia Human Rights Act, D.C. Code §§ 2-

1401.01 *et seq*. ("DCHRA"); as well as (3) negligent retention, training, and supervision.

Defendant has moved to dismiss Plaintiff's Complaint in its entirety under Federal Rules of Civil

Procedure 12(b)(6) and 12(b)(1) for failure to state a claim upon which relief can be granted and

for lack of subject matter jurisdiction.

Having carefully considered the Complaint and the parties' arguments, for the reasons that

follow, the court grants Defendant's Motion to Dismiss.

## II.    BACKGROUND

### A.    Factual Background

Plaintiff Cheketa McKnight-Nero is a resident of Maryland who suffers from various health conditions, including diabetes, high blood pressure, and a rare blood cancer. *See* Compl., ECF No. 1 [hereinafter Compl.], ¶ 19. She alleges that on May 12, 2020, she traveled to the Walmart store located at 5929 Georgia Avenue Northwest in Washington, D.C., for the purpose of taking advantage of the store's "exclusive shopping" hour for "Seniors and Customers with Compromised Health" during the "COVID-19 public health crisis." *Id.* ¶ 20. According to Plaintiff, the store "provides exclusive shopping periods between the time of 6:00 a.m. to 7:00 a.m. [on Tuesdays and Thursdays] for Senior citizens over the age of 65 and people who have an impaired immune system, or identify as 'immunocompromised,'" *id.* ¶¶ 8, 21, to "reduc[e] their risk of contracting COVID-19 during regular business hours," *id.* ¶ 20.

Upon arriving at the entrance to the store at approximately 6:20 a.m., Plaintiff alleges "she was prohibited from entering . . . by a contracted security guard from Brosnan Security Solutions," a company with which Walmart contracts to "perform security services" at that particular location. *Id.* ¶¶ 22–23. Plaintiff recounts two different reasons why the guard refused her entrance to the store despite explaining to him that "she was an individual with a compromised immune system," *id.* ¶ 24, and that it would be her only opportunity "to shop for essential items that she needed for the week," *id.* ¶ 26. She first alleges that the guard "did not believe" she had compromised health. *Id.* ¶ 24. Additionally, the guard later stated that he was instructed by Walmart to allow only "'seniors' to enter the store between 6:00 a.m. and 7:00 [a].m." *Id.* ¶ 29. In either event, Plaintiff was denied entry.

At that point, Plaintiff says, she asked to speak to the store manager. *See id.* ¶ 25. When the guard refused to call for a manager, Plaintiff called the emergency telephone line of the police station adjacent to the store, and within minutes, three officers from the D.C. Police Department arrived at the scene. *Id.* ¶ 27. Plaintiff alleges that the police officers also asked the guard to call a store manager, but the manager never arrived. *Id.* ¶ 30. By that time, it was after 7:00 a.m. and the end of the exclusive shopping hour, so the guard permitted Plaintiff to enter the store. *Id.* ¶ 31. Plaintiff maintains that she was unable to shop, however, "due to the stress and anxiety of shopping with the public." *Id.* ¶ 32.

### B.      Procedural Background

Plaintiff filed the Complaint in this action on June 11, 2020. *See* Compl. The Complaint asserts seven counts: Counts 1 and 2 allege "Public Accommodations Violation" and "Disability Discrimination" under the DCHRA, *see id.* ¶¶ 33–38; Count 3 alleges "Disability Discrimination" under the ADA, *see id.* ¶¶ 39–41; Count 4 alleges "Negligent Retention, Training and Supervision," *see id.* ¶¶ 42–45; Counts 5 and 6 allege "Disparate Impact – Public Accommodation Discrimination" and "Disparate Impact – Disability Discrimination" under the DCHRA, *see id.* ¶¶ 46–55; and Count 7 alleges "Disparate Impact – Disability Discrimination" under the ADA, *see id.* ¶¶ 56–60. Defendant has moved to dismiss Counts 3 and 7 for lack of standing, *see* Mot. to Dismiss, ECF No. 13 [hereinafter Def.'s Mot.], at 12–14, and every Count for failure to state a claim, *see id.* at 4–12, 14–17.

## II.      LEGAL STANDARD

### A.      Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of standing is properly considered under Rule 12(b)(1), as standing goes to the court's subject matter jurisdiction. *M.J. v. Dist. of Columbia*, 401 F. Supp. 3d

1, 7–8 (D.D.C. 2019).  When reviewing a motion to dismiss for lack of subject matter jurisdiction, a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  Plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

### B.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Bradley v. D.C. Pub. Sch.*, 87 F. Supp. 3d 156, 160 (D.D.C. 2015).

## IV.    DISCUSSION

The court begins its discussion with Plaintiff's ADA claims.  The court then turns to Plaintiff's DCHRA claims and ends with a discussion of her negligent retention, training, and supervision claim.

### A.    Plaintiff's ADA Claims (Counts 3 and 7)

Plaintiff's ADA claims challenge her access to a place of public accommodation and therefore arise under Title III of the statute.  *See* Pl.'s Resp. in Opp'n to Walmart's Mot. to Dismiss, ECF No. 17 [hereinafter Pl.'s Opp'n], at 1, 4–6 (acknowledging that her claims arise under Title III).  Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a). "Private parties bringing suit under Title III of the ADA are limited exclusively to injunctive relief."  *Jefferson v. Stinson Morrison Heckler LLP*, 249 F. Supp. 3d 76, 80 (D.D.C. 2017) (citing 42 U.S.C. § 12188 (incorporating § 2000a–3(a), which authorizes a "civil action for preventive relief")); *see also Reeves v. MV Transp., Inc.*, 845 F. Supp. 2d 104, 107 (D.D.C. 2012) ("[O]nly injunctive relief is available for violations of Title III." (cleaned up)).  In this case, Walmart argues that Plaintiff lacks standing to assert her ADA claims because she has not shown a sufficient "likelihood of future injury from Walmart's exclusive shopping program" that could be remedied by injunctive relief.  Def.'s Mot. at 12.  The court agrees.

This court's powers under Article III of the Constitution are limited to adjudicating actual cases or controversies.  *See Honig v. Doe*, 484 U.S. 305, 317 (1988).  "In an attempt to give meaning to . . . [that] requirement, the courts have developed a series of principles termed justiciability doctrines, among which [is] standing . . . ."  *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal quotation marks and citation omitted).  To establish standing, a plaintiff must show: (1) that she has "suffered an injury in fact," defined as the "invasion of a legally protected interest [that] is both (a) concrete and particularized, . . . and

(b) actual or imminent, not conjectural or hypothetical"; (2) that a "causal connection" exists "between the injury and the conduct complained of," such that the injury is "fairly traceable to the challenged action of the defendant"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a" decision in favor of the plaintiff.  *Lujan*, 504 U.S. at 560–61 (cleaned up).

Furthermore, in actions like this one where a plaintiff seeks injunctive relief, "[t]he standing requirement . . . 'cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again.'"  *Jefferson*, 249 F. Supp. 3d at 81 (quoting *Deck v. Am. Haw. Cruises, Inc.*, 121 F. Supp. 2d 1292, 1297 (D. Haw. 2000)).  "[H]arm in the past . . . is not enough to establish a present controversy, or in terms of standing, an injury in fact."  *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336 (D.C. Cir. 2003).  Stated another way, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury."  *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1022 (D.C. Cir. 1998).

Here, Plaintiff has failed to allege any facts whatsoever establishing a likelihood of future injury from Walmart's exclusive shopping program.  For starters, there is no indication that Plaintiff ever plans to return to the Georgia Avenue Walmart location.  Plaintiff does not reside in the District of Columbia, *see* Compl. ¶ 3, she makes no representation that she has ever visited this particular Walmart location in the past, and she makes no averment that she intends to visit it in the future.  *See Anderson v. Macy's Inc.*, 943 F. Supp. 2d 531, 539 (W.D. Pa. 2013) (providing factors courts look to in "determin[ing] the likelihood of a plaintiff returning to the place of [an] alleged ADA violation," including: "(1) the plaintiff's proximity to the defendant's place of public

accommodation; (2) the plaintiff[']s past patronage; [and] (3) the definitiveness of the plaintiff's plan to return"). Plaintiff therefore fails to plead any likelihood of *future* injury.

Even if Plaintiff had made a bare assertion of intent to return to the Georgia Avenue Walmart's exclusive shopping hour, that alone is insufficient to show "real or immediate threat that the plaintiff will be wronged again." *Jefferson*, 249 F. Supp. 3d at 81. The Supreme Court has long held that "[p]ast exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (holding prior interaction with police did not establish "real and immediate threat that [plaintiff] would again be stopped" and subjected to allegedly unconstitutional tactic). Plaintiff's allegations amount to the following: on one occasion, a security guard denied Plaintiff entry to the Georgia Avenue Walmart store's exclusive shopping hour because the guard either 1) was instructed by Walmart to allow "only 'seniors' to enter the store" for the exclusive shopping period, *see* Compl. ¶ 29, or 2) did not believe Plaintiff was immunocompromised, *id.* ¶ 24. Those allegations say nothing about the likelihood that another guard, or even the same guard, would make the same mistake on another occasion. Plaintiff would have the court infer from Walmart's alleged "no[n] uniform" exclusive shopping program policy that she would again be denied access to the exclusive shopping hour on a future visit to the store. Compl. ¶ 9; *see* Pl.'s Opp'n at 11 ("Without adequate policy or practices, Walmart's guards or employees . . . will commit 'future violations of Plaintiff's rights'"). Although Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins.*, 642 F.3d at 1139, she is not entitled to implausible inferences that are divorced from the actual facts pleaded, *cf. Deck*, 121 F. Supp. 2d at 1297 ("[A] Plaintiff does not have standing to sue for []

injunctive relief by merely alleging that Defendant has a policy and practice of discriminating against disabled persons generally." (citing *Lyons*, 461 U.S. at 101)).

Accordingly, because Plaintiff has not shown "a real or immediate threat that [she would] be wronged again," she lacks standing to seek injunctive relief. And because injunctive relief is the only remedy available under Title III of the ADA, *see Reeves*, 845 F. Supp. 2d at 107, Counts 3 and 7 must be dismissed, *see* Fed. R. Civ. P. 12(h)(3).[1]

### B.      Plaintiff's DCHRA Claims (Counts 1–2 and 5–6)

Before diving into an analysis of Plaintiff's DCHRA claims, the court must first untangle them. The Complaint does not identify the specific provisions upon which Plaintiff's DCHRA claims are based, and Plaintiff appears to assert duplicative claims. Like the ADA, the DCHRA prohibits discrimination on the basis of a disability in a place of public accommodation. Specifically, it makes it unlawful for any "place of public accommodation" to deny a person "full and equal enjoyment" of "goods, services, facilities, privileges, advantages, [or] accommodations" if the denial is made "wholly or partially for a discriminatory reason based on the actual or perceived . . . disability" of the individual. D.C. Code § 2-1402.31. In this context, a plaintiff may base a claim of disability discrimination on one of three theories of liability: (1) intentional discrimination, otherwise known as disparate treatment; (2) disparate impact; or (3) failure to accommodate. *See Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 308 (D.D.C. 2015).

Here, Plaintiff purports to be raising two disparate treatment claims—one for "Public Accommodations Violation" (Count 1) and one for "Disability Discrimination" (Count 2), *see* Compl. at 7—as well as two corresponding disparate impact claims (Counts 5 and 6), *see id.* at 9.

---

[1] For reasons discussed *infra* Section IV.B., Plaintiff has also failed to state a claim for discrimination on the basis of a disability in a place of public accommodation under the ADA.

But a "public accommodations violation" is not a distinct claim from "disability discrimination" under the DCHRA; they are two components of the same claim.  That is, under D.C. Code § 2-1402.31, disability is the protected trait, and "full and equal enjoyment" of "public accommodations" is what must be afforded on equal terms.  Accordingly, Count 1 is duplicative of Count 2, and Count 5 is duplicative of Count 6.  The court thus construes the Complaint to allege one count of disparate treatment and one count of disparate impact under the DCHRA. Defendant argues that Plaintiff has failed to state a claim for either claim.  *See* Def.'s Mot. at 5–12. The court considers each claim in turn and agrees with Defendant.

### 1.    *Disparate Treatment (Counts 1 and 2)*

Where a plaintiff alleges disparate treatment under the DCHRA, liability depends on whether the defendant's actions were taken "because of" the plaintiff's disabilities.  *Boykin v. Gray*, 895 F. Supp. 2d 199, 210, 219 (D.D.C. 2012); *see Seth v. District of Columbia*, No. 18-cv-1034, 2018 WL 4682023, at *11 (D.D.C. Sept. 28, 2018), *aff'd*, 2020 WL 2611716 (D.C. Cir. Apr. 21, 2020).  It is not enough for a plaintiff to allege that she has a disability and was denied service.  Rather, a plaintiff "need[s] to allege that" defendant's actions were "on account of [plaintiff's] disabilities." *Boykin v. Fenty*, 650 F. App'x 42, 44 (D.C. Cir. 2016).[2]  Plaintiff in this case has not done so.

Plaintiff's Complaint is devoid of any facts showing that Walmart acted in any way *because of* Plaintiff's disability.  In fact, the Complaint squarely forecloses such an inference, as it provides two reasons for the security guard's action, both of which suggest the guard acted

---

[2] "District of Columbia courts interpreting the DCHRA 'have generally looked [for guidance] to cases from the federal courts' arising under federal civil rights statutes." *Whitbeck v. Vital Signs, Inc.*, 116 F.3d 588, 591 (D.C. Cir. 1997) (quoting *Benefits Commc'n Corp. v. Klieforth*, 642 A.2d 1299, 1302–02 (D.C. 1994)).  Therefore, cases involving parallel provisions of the ADA are persuasive in reviewing Plaintiff's DCHRA claims.  *See Chang v. Inst. For Pub.-Private P'ships, Inc.*, 846 A.2d 318, 324 (D.C. 2004).

*despite* Plaintiff's disability, not *because of* it.  As discussed, Plaintiff alleges that the security

guard either 1) "did not believe that [plaintiff] was disabled," Compl. ¶ 24, or 2) was instructed by

Walmart to allow "only 'seniors' to enter the store" for the exclusive shopping period, *see id.* ¶ 29.

As the Supreme Court recognized in *Raytheon Co. v. Hernandez*, a defendant cannot act "because

of [a] disability" if she is "entirely unaware that such a disability exist[s]."  540 U.S. 44, 54 n.7

(2003).  Here, Plaintiff alleges that the security guard *disbelieved* that she was disabled and treated

her as if she did not have a disability.  In such a scenario, the disabled person "cannot, *ipso facto*,

have been subject to disparate treatment."  *Id.*; *see also Fiorillo v. United Techs. Corp.*, No. 13-

cv-1287, 2015 WL 5797010, at *10 n.9 (D. Conn. Sept. 30, 2015) (finding plaintiff's employment

benefits were denied "not *because* of her physical and mental disabilities, as is necessary to sustain

an ADA claim, but because [defendant] believed that [plaintiff] was *not* disabled" and was instead

malingering); *A.F. v. Starbucks Corp.*, No. 3:17-cv-1582, 2018 WL 1161385, at *5 (D. Or. Mar. 5,

2018) (dismissing action where plaintiff failed to "allege[] any facts to suggest that Defendant's

employees *knew* about Plaintiff's disability"); *Spears v. E-Z Mart Stores, Inc.*, No. 12-cv-17,

2013 WL 1309398, at *4 (N.D. Okla. March 26, 2013) (dismissing action where plaintiff

"assert[ed] that [defendant] did *not* believe he was disabled"); *Hendricks v. Stepp*, No. 08-cv-3299,

2009 WL 2224524, at *5 (D.S.C. July 22, 2009) ("The defendants cannot have discriminated . . .

on the *basis* of a disability if they knew nothing about it.").

Plaintiff's reliance on case law involving "hidden disabilities" and emphasis on the

DCHRA's language regarding "perceived" disabilities is misplaced.  *See* Pl.'s Opp'n at 6–7

(discussing D.C. Code § 2-1402.31(a) (prohibiting discrimination based on "actual or perceived

. . . disability")).  The language in the DCHRA regarding perceptibility stands for the proposition

that a person who is *not* disabled remains protected from discrimination if someone "mistakenly

believes" she *is* disabled and acts on that "misperception[n]." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). It does not, as Plaintiff suggests, negate the statute's causality requirement or protect someone mistakenly regarded as *not* disabled from being treated the same as non-disabled customers. That is simply not the purpose of anti-discrimination laws. *Cf. Doe v. Pfrommer*, 148 F.3d 73, 83 (2d Cir. 1998) (explaining that the purpose of the ADA is "to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied").

Because Plaintiff has "proffered absolutely no allegations supporting a plausible inference that" the security guard denied her entry to Walmart's exclusive shopping hour because of her disability, *Fenty*, 650 F. App'x at 44, Plaintiff has failed to state a claim for disparate treatment under the DCHRA. Accordingly, the court dismisses Counts 1 and 2.

### 2.    *Disparate Impact (Counts 5 and 6)*

Plaintiff's disparate impact claim under the DCHRA fails for similar reasons.[3] A plaintiff may state a disparate impact claim by alleging facts showing that a "facially neutral practice or policy has a disproportionate impact on persons with disabilities." *Fenty*, 650 F. App'x at 44; *see* D.C. Code § 2-1402.68 (prohibiting "[a]ny practice which has the effect or consequence of violating any of the provisions of this chapter"); *Seth*, 2018 WL 4682023, at *12; *Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 47 (D.D.C. 2003). In other words, a place of public accommodation cannot adopt even well intentioned policies that have the effect of preventing the disabled from obtaining service equal to that offered to non-disabled individuals. *See Doe*, 148 F.3d at 83.

---

[3] Plaintiff also appears to restate her disability discrimination counts as "class claims" in Counts 5–7, *see* Compl. at 9 (listing Counts 5–7 under the title "Class Claims"), but because those claims are premised on Plaintiff's individual discrimination claims, they fail for the same reasons. *See Brewer v. Holder*, No. 08-cv-1747(BJR), 2013 WL 12399111, at *2 (D.D.C. Oct. 11, 2013).

Here, Plaintiff alleges that Walmart "implements a policy that randomly selects customers that it perceives to have a disability[] to shop in its stores during exclusive shopping hours," Compl. ¶ 48, and that policy "disproportionally impacts those with unseen or non-visible disabilities," *id*. ¶ 49.   In opposition to Defendant's motion to dismiss, Plaintiff more generally asserts that Walmart's policy, "[a]lthough well intentioned, . . . has the effect of preventing those who are immunocompromised or with hidden disabilities[] from obtaining equal services to what is made available to individuals who are not disabled."  Pl.'s Opp'n at 9.  But that simply cannot be because "individuals who are not disabled" are not authorized to shop during the exclusive shopping hour. Indeed, that is the fundamental problem with Plaintiff's claim—Walmart's policy is not "facially neutral" to begin with; it is a policy applying to only a protected class (disabled and elderly shoppers).  Thus, here again, what Plaintiff seems to allege is that Walmart's policy or practice has the effect of treating individuals with "hidden disabilities" differently than persons with visible disabilities, but the same as non-disabled persons.  Such allegations are insufficient to state a claim of disparate impact, and Plaintiff offers no authority suggesting otherwise.

Even if Plaintiff could state a disparate impact claim by alleging that Walmart's policy disproportionately favors one set of disabled persons over another, the Complaint lacks facts supporting such an allegation.  "Allegations about [a plaintiff's] individual experiences accessing services" are insufficient to show disparate impact, as they "say nothing about whether [defendant's policy or practice] ha[s] a disparate impact on persons with disabilities." *Fenty*, 650 F. App'x at 44; *see also City of Joliet v. N*ew *W., L.P.*, 825 F.3d 827, 830 (7th Cir. 2016) ("Disparate-impact analysis looks at the effects of policies, not one-off decisions.").  Plaintiff does not identify or otherwise hint at a single person other than herself who was wrongly denied access to Walmart's exclusive shopping hour.  Plaintiff appends to her Complaint several tweets from

individuals claiming they were wrongly denied access to exclusive shopping hours at *other retailers*, *see* Compl., Ex. 1, ECF No. 1-1, but those allegations say nothing of the impact of *Walmart's* policy or practice.   The only other Walmart customer Plaintiff mentions in her Complaint is another customer without a visible disability who was permitted to enter the store during the exclusive shopping hour.   *See* Compl. ¶ 25.   That allegation directly undermines Plaintiff's argument that Walmart's policy disfavors customers with non-visible disabilities.

Thus, because Plaintiff has alleged no facts to plausibly show that Walmart's exclusive shopping program policy or practice has a "disproportionate impact on persons with disabilities," she has failed to state a claim for disparate impact.   Counts 5 and 6 are therefore dismissed.

### C.       Negligent Retention, Training & Supervision (Count 7)

Plaintiff's final claim is for negligent retention, training and supervision.   *See* Compl. ¶¶ 42–45.   Specifically, Plaintiff alleges that "Defendant breached [a duty of care owed to its patrons] by failing to retain, train, and supervise its agents or employees about disability discrimination."   *Id.* ¶ 43.   "D.C. case law does not appear to distinguish between negligent supervision and negligent retention."   *Thorp v. District of Columbia*, 319 F. Supp. 3d 1, 21 (D.D.C. 2016) (quoting *Islar v. Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 265 n.1 (D.D.C. 2016)). "To invoke [either] theory of liability[,] it is incumbent upon a party to show that an employer knew or should have known its *employee* behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee."   *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985); *see also Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 28 (D.D.C. 2008) ("An employer has the legal duty to use ordinary care so as not to employ or retain an independent contractor it knew or should

have known was negligent in performing the contract."). The court agrees with Defendant that this claim also fails, for at least two reasons. *See* Def.'s Mot. at 14–17.

*First,* as already discussed, *supra* at pp. 9–11, Plaintiff has failed to plausibly state that the contracted security guard discriminated against her on the basis of her disability, and therefore "disability discrimination" is not a cognizable predicate for a negligent retention, training, and supervision claim. *See Steele v. Isikoff*, 130 F. Supp. 2d 23, 37 (D.D.C. 2000) (dismissing negligent hiring and supervision counts after rejecting "first eight counts" because "[w]ithout any primary liability, there can be no derivative liability").

*Second*, and more critically, "a common law claim of negligent supervision may be predicated only on common law causes of action or duties otherwise imposed by the common law." *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007). "To hold otherwise would be to impose liability on employers for failing to prevent a harm that is not a cognizable injury under the common law." *Tridico v. District of Columbia*, 130 F. Supp. 3d 17, 31 (D.D.C. 2015) (cleaned up). In other words, a *statutory* violation cannot give rise to a negligent supervision claim and, thus, a "negligent supervision claim cannot be predicated on a violation of the DCHRA." *Griffin*, 925 A.2d at 579.

Because Plaintiff has not alleged independent tortious conduct by the contracted security guard, she cannot maintain a claim against Defendant for negligently retaining, training or supervising its employees. *See Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 87 (D.D.C. 2019) (dismissing negligent training and supervision claims because they were "not predicate[d] . . . on a common law cause of action"); *Islar*, 217 F. Supp. 3d at 268 (dismissing negligent supervision and retention claims where plaintiff could not identify a "predicate claim

14

under *Griffin* that would permit him to recover on a negligent supervision or retention theory").

Accordingly, Count 7 is dismissed.

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 13, is hereby granted

in full.

A final appealable Order accompanies this Memorandum Opinion.


Dated:  February 19, 2021

_____
Amit P. Mehta
United States District Court Judge